IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FIRST NATIONAL INSURANCE COMPANY )
OF AMERICA, a Washington )  02:04-cv-836-GEB-JFM
corporation, )
 )
                  Plaintiff, )
 )  ORDER[*]
    v. )
 )
MBA CONSTRUCTION, a California )
corporation doing business as MACK )
CONSTRUCTION; KEVIN D. MACK, an )
individual; KATIE BAUGH, an )
individual; and DANNY W. BAUGH, )
an individual, )
 )
                  Defendants. )
_____)

        Plaintiff seeks $138,449.68 in attorney fees and related expenses, $709.62 in travel expenses, and $14,291.59 in prejudgment interest. (McGowan Supp. Decl. ¶¶ 2-3.) Defendants oppose the motion.

## BACKGROUND

        Plaintiff and Defendants entered into a General Agreement for Indemnity ("Indemnity Agreement") whereby Plaintiff agreed to issue a payment bond guaranteeing the obligations of Defendant Mack Construction for a construction project for the Redding School

---

[*] This motion was determined to be suitable for decision without oral argument. L.R. 78-230(h).

1

District. (Hyslop Decl. ¶¶ 5,9.) In return, Defendants agreed to indemnify Plaintiff for any loss, cost or expense incurred in connection with the payment bond. (Id. ¶ 5, Ex. A.) When several subcontractors on the project submitted claims against the payment bond, Plaintiff paid these subcontractors. (Id. ¶¶ 14-21) Plaintiff requested Defendants reimburse and collateralize Plaintiff for these payments, but Defendants did not reimburse Plaintiff for the claims of two subcontractors, Partition Specialty and Tina's Interior Design Resource. (Id. ¶¶ 15-27.) Plaintiff subsequently filed this action, seeking $77,728.00 for its payment to Partition Specialty and $25,237.36 for its payment to Tina's Interior Design Resource, as well as attorney fees, expenses, and prejudgment interest. (Pl.'s Mem. of P. & A. in Support of Postjudgment Mot. for Att'y Fees, Expenses and Prejudgment Interest ("Pl.'s Mem.") at 1.)

In April 2005, Plaintiff filed a Motion for Partial Summary Judgment seeking specific performance of the collateral security provisions of the Indemnity Agreement. An Order filed July 22, 2005, held that Plaintiff was not entitled to collateralization for the payment to Tina's Interior Design Resource because a genuine issue of material fact existed as to whether Plaintiff's "alleged interference . . . at least in part caused Plaintiff" to pay the claim. (Order, July 22, 2005, ("July Order") at 5.) However, the July Order held that Plaintiff was entitled to collateralization for the payment to Partition Speciality. Id. An Order filed August 11, 2005, required Defendants to collateralize Plaintiff in the amount of $77,728.00 within twenty (20) days of the date of the Order. (Order, August 11, 2005, ("August Order") at 1.)

On September 8, 2005, pursuant to a stipulation by the parties, judgment was entered against Defendants jointly and severally "in the amount of $ 102,966.00, exclusive of any recoverable interest, costs or attorney fees." (Stipulation and J. at 3.) The judgment satisfied the August Order that Defendants collateralize Plaintiff in the amount of $77,728.00. (Id. at 4.) However, the judgment neither waived "Plaintiff's claim for interest, costs, and attorneys' fees, nor any of Defendants' defenses to said claims." (Id. at 3.) The judgment allowed Plaintiff to submit a claim for interest, costs and attorney fees pursuant to Local Rules 52-292 and 52-293, and stated the "Court shall rule on Plaintiff's claims for interest, costs and/or attorneys' fees pursuant to the applicable law, and issue an additional judgment if, and to the extent, the Court finds interest, costs, and/or attorney fees are recoverable." (Id.)

DISCUSSION

Jurisdiction over this case is premised on diversity of citizenship of the parties. (Pl.'s Complaint ¶ 1.) In diversity actions, state law governs an award of attorney fees, expenses and prejudgment interest. In re Baroff, 105 F.3d 439, 442 (9th Cir. 1997); Northrop Corp. v. Triad Int'l Mkt. S.A., 842 F.2d 1154, 1155 (9th Cir. 1988). The parties do not dispute that California law applies.[1] Therefore, California law governs whether Plaintiff recovers attorney fees, expenses and prejudgment interest.

---

[1] Plaintiff asserts "state law governs" and bases its Motion for Attorney Fees and Prejudgment Interest on California law. (Pl.'s Mem. at 8-9.) Defendants do not explicitly assert that state law governs, but base their Opposition on California law. (See Defs.' Mem. of P. & A. in Opp'n ("Defs.' Opp'n") at 5, 11-14, 17-18.)

I. Attorney Fees

California Code of Civil Procedure § 1021 provides that "[e]xcept as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; but parties to actions or proceedings are entitled to their costs, as hereinafter provided." (West Supp. 2005). Pursuant to California Code of Civil Procedure §§ 1032 and 1033.5, the prevailing party may recover attorney fees as costs when authorized by contract. Scott Co. of Cal. v. Blount Inc., 20 Cal. 4th 1103, 1008-09 (1999). In addition, California Civil Code § 1717(a) states that "[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded . . . then the party who is determined to be the prevailing party on the contract . . . shall be entitled to reasonable attorney fees in addition to other costs." (West 1998). Therefore, in order for Plaintiff to recover the attorney fees it seeks, (1) the contract must authorize such fees, (2) Plaintiff must be the prevailing party, and (3) the fees incurred must be reasonable.

    A. Indemnity Agreement

Plaintiff argues that the Indemnity Agreement authorizes an award of attorney fees and related expenses.[2] (Pl.'s Mem. at 8.) Pursuant to the Indemnity Agreement, Defendants agreed to pay Plaintiff upon demand "[a]ll loss, costs and expenses of whatsoever kind and nature, including court costs, reasonable attorney fees . . .

---

[2] Defendants do not appear to dispute that the Indemnity Agreement authorizes an award of attorney fees because they acknowledge that the "Indemnity Agreement calls for reasonable attorney fees." (Defs.' Opp'n at 6.)

4

and any other losses, costs or expenses incurred by Surety by reason of having executed any Bond, or incurred by it on account of any Default under this agreement . . . ." (Hyslop Decl. Ex. A.) According to the Indemnity Agreement, "Default" occurs if a Defendant "[b]reaches, fails to perform, or comply with any provision of this agreement." (Id.) Consequently, because Defendants "fail[ed] to provide the required indemnity and reimbursement owed to Plaintiff," the Indemnity Agreement authorizes an award of attorney fees and related expenses to Plaintiff. (July Order at 3.)

### B. Prevailing Party

Plaintiff argues it is the prevailing party because "the Stipulation and Judgment clearly provides that Judgment will be entered in favor of Plaintiff in the amount of $102,966.00." (Pl.'s Mem. at 9.) Plaintiff asserts "Defendants take nothing under the Stipulation and Judgment and make no claim for affirmative relief . . . that could decrease the judgment." (Id.) Defendants argue they are the prevailing party, or alternatively, that no party prevailed because the "results of the litigation are mixed, i.e. the opposing litigants . . . [can] each legitimately claim some sucess in the litigation." (Defs.' Opp'n at 17.)

"When a party obtains a simple, unqualified victory by completely prevailing on or defeating all contract claims in the action and the contract contains a provision for attorney fees, section 1717 entitles the successful party to recover reasonable attorney fees incurred in prosecution or defense of those claims." Scott Co. of Cal., 20 Cal. 4th at 1109. However, if neither party achieves a "complete victory on all the contract claims," the trial court has discretion "to determine which party prevailed on the

5

contract or whether, on balance, neither party prevailed sufficiently to justify an award of attorney fees." Id. To determine whether a party prevailed, "the trial court is to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources." Id.

Defendants admit that the judgment against Defendants in the amount of $102,966, "was equivalent to the Bond claims of Partition Speciality, Inc. for $77,728.00 and Tina's Interior Design Resource for $25,237.00 plus 64 cents." (Defs.' Opp'n at 6.) Consequently, through the judgment Plaintiff acquired precisely the relief it sought: reimbursement for Plaintiff's payments to these two subcontractors. Therefore, the results of Plaintiff's "contract claims are not mixed" as Defendants argue because the resolution of the "contract claims is purely good news for one party and bad news for the other." Hsu v. Abbara, 9 Cal. 4th 863, 875-76 (1995).

Defendants also argue Plaintiff should not be considered the prevailing party under the equitable doctrine of unclean hands.[3] (Defs.' Opp'n at 13.) Although "courts should be guided by equitable considerations," when one party obtains an "unqualified win" the other party "may not invoke equitable considerations unrelated to litigation success." Hsu, 9 Cal. 4th at 877. Otherwise, consideration of equitable principals "would convert the attorney fees motion from a

---

[3] Defendants assert Plaintiff is barred from recovery under the equitable doctrine of unclean hands because (1) Plaintiff interfered with Defendants' ability to receive payments from the Redding School District, (2) Plaintiff paid Tina's Interior Design and Partition Specialty prematurely, (3) Plaintiff breached the Indemnity Agreement, not Defendants, (4) Plaintiff refused Defendants' request to stay this action, and (5) Plaintiff "reneged" on a settlement deal to resolve all outstanding claims on the project. (Defs.' Opp'n at 3-4.)

6

relatively uncomplicated evaluation of the parties' comparative litigation success into a formless, limitless attack on the ethics and character of every party who seeks attorney fees." Id. at 877. Consequently, when the "results of the litigation on the contract claims are not mixed . . . a trial court has no discretion to deny attorney fees to the successful litigant." Id. at 876-77. Since Plaintiff has achieved an "unqualified victory," Defendants' argument that Plaintiff should be denied attorney fees on account of equitable considerations unrelated to litigation sucess is unavailing. Id. Therefore, Plaintiff is the prevailing party and may recover reasonable attorney fees.

### C. Reasonable Fees

Plaintiff argues that the $138,449.68 in attorney fees and related expenses and the $709.62 in travel expenses Plaintiff incurred to enforce the Indemnity Agreement are reasonable.[4] (Pl.'s Mem. at 10; McGowan Supp. Decl. ¶ 3.) Defendant contends "the attorney fees are unquestionably unreasonable" and "travel expenses are not recoverable" in a motion for attorney fees. (Defs.' Opp'n at 9,17.) "[G]eneral rules [have been developed] to guide the exercise of . . . [the court's determination of] a reasonable fee." People ex rel. Dept. of Transp. v. Yuki, 31 Cal. App. 4th 1754, 1767 (1995). "The starting point in determining a reasonable fee is a calculation of the attorney's services in terms of the time he or she has expended on the case." Id.; PLCM Group v. Drexler, 22 Cal. 4th 1084, 1095 (2000)

---

[4] Plaintiff states that the amount of attorney fees and related expenses were calculated by taking the total amount of fees and expenses incurred through October 31, 2005, and deducting $3,797.44, which was submitted separately in a Bill of Costs filed September 21, 2005. (McGowan Supp. Decl. at 2, n. 1.)

("California courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award."). However, the amount of the award can be adjusted "based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided."[5] PCLM Group, 22 Cal. 4th at 1095.

Defendants argue Plaintiff's attorney fees and expenses are unreasonable because the case was "relatively simply and [did] not require special skills." (Defs.' Opp'n at 10.) In addition, Defendants contend Plaintiff "did nothing more than prepare (1) a boilerplate Motion to Dismiss [Defendants' First Amended Counterclaim] . . .; (2) a Motion for Partial Summary Judgment . . .; and (3) oppose [Defendants'] Motion to Stay Proceedings During the Pendency of the State Court Action." (Defs.' Opp'n at 8.) Plaintiff responds that the attorney fees and expenses are reasonable because of "the aggressive pleadings and motions filed by Defendants . . . and the fact that the Stipulation and Judgment was reached on a date so close to the scheduled trial date." (Pl.'s Reply at 20.) In addition, Plaintiff argues the Motion to Dismiss was "hardly boilerplate," and

---

[5] The court may consider (1) the novelty and difficulty of the questions involved and the skill required to perform the legal services properly, (2) the likelihood that the acceptance of this particular employment would preclude other employment by the attorneys, (3) the amount involved and the results obtained, (4) the time limitations imposed by the client or by the circumstances of the case, (5) the nature and length of the professional relationship with the client, (6) the experience, reputation, and ability of the attorneys who performed the services, (7) whether the fee is fixed or contingent, (8) the time and labor required of the attorneys, and (9) the informed consent of the client to the fee agreement. Glendora Cmty. Redevelopment Agency v. Demeter, 155 Cal. App. 3d 465, 474 (1984); PCLM Group, 22 Cal. 4th at 1096.

8

the "Motion for Partial Summary Judgment was . . . laborious, due to the extensive evidentiary objections and other arguments . . . by Defendants in Opposition." (Id.)  Plaintiff also asserts that "these motions [were] not the only tasks performed by Plaintiff during the sixteen months that the parties litigated this matter."  Plaintiff contends that "[a]mong other legal work, Defendants ignore the trial preparation, the preparation and taking of a deposition, the attempts to obtain written discovery from Defendant [sic], the attempts to enter a collateral agreement, and necessary joint statements and other tasks required of any party in litigation." (Id. 20-21.)

A review of all the documents filed in this action and the declarations and exhibits submitted by Plaintiff detailing the hours worked by counsel on each particular matter, reveals that a considerable amount of time and effort was required of Plaintiff's counsel to successfully litigate this action.  Although Plaintiff's counsel spent significant time filing a Motion to Dismiss, a Motion for Partial Summary Judgment, and a Motion in Opposition to Defendants' Motion to Stay Proceedings, all of these motions were decided in whole or in part in favor of Plaintiff.  In addition, most of the other tasks performed by Plaintiff's counsel, such as requesting written discovery, preparing for and conducting a deposition, and engaging in negotiations with Defendants regarding settlement, appear to have contributed to the eventual resolution of this litigation.  Finally, although Plaintiff's counsel spent considerable time in August 2004 and September 2004 preparing for trial, that amount of time appears reasonable because judgment was entered against Defendants only a few weeks prior to the trial date of September 27, 2005.  Therefore, Plaintiff is awarded the attorney fees

associated with these hours because the majority of the time billed by Plaintiff's counsel was reasonable.

Defendants also object to the time billed by Plaintiff's counsel on certain tasks. First, Defendants argue that the time Plaintiff's counsel spent preparing the Motion for Attorney Fees is not reasonable.[6] (Defs.' Opp'n at 6.) Plaintiff responds that these fees are reasonable because the motion "includes a mix of legal argument and factual presentation that required the significant attorney time documented" due to "the vast array of substantive and procedural argument raised by Defendants in their Opposition." (Pl.'s Reply at 21.) Although Plaintiff's counsel expended considerable time preparing the Motion for Attorney Fees and the Reply, these hours appear reasonable in light of the time necessary to file the briefs, to prepare the supporting declarations, to explain month-by-month what fees were incurred and why, and to compile all the invoices, billing statements, and other supporting documents. Therefore, Plaintiff is awarded the fees associated with these hours.

Second, Defendants contend Plaintiff should not recover the attorney fees Plaintiff incurred while defending actions in state court by other payment bond claimants and the California State Department of Labor Standards Enforcement. (Defs.' Opp'n at 18.) Plaintiff argues that the Indemnity Agreement allows Plaintiff to recover attorney fees incurred "in defending against claims against

---

[6] At the time Defendants filed their Opposition, Defendants argued that Plaintiff counsel's estimate of "$14,980.00 (to prepare the motion for attorney fees) . . . is not reasonable." (Defs.' Opp'n at 6.) However, after Defendants filed their Opposition, Plaintiff incurred additional attorney fees due to the preparation of the Reply brief. (McGowan Supp. Decl. ¶ 2.) According to the invoice submitted by Plaintiff, the final amount of attorney fees and expenses incurred for both the Motion and Reply total $26,008.63. (Id. Ex. A.)

the bonds Plaintiff issues on behalf of Defendant Mack Construction."
(Pl.'s Mem. at 12.)  Plaintiff contends that the attorney fees
incurred defending the state court actions are recoverable because
they "were incurred as a result of issuing the [b]onds" pursuant to
its obligations under the Indemnity Agreement. (Id. at 12.)

Although the attorney fees were incurred in connection with separate state court cases, these fees are closely related to this action because they were incurred by Plaintiff while defending the same payment bond that is the subject of this litigation.  "[A] trial court may, in its discretion, determine that time reasonably expended on an action includes time spent on other separate but closely related court proceedings."  Wallace v. Consumers Cooperative of Berkeley, Inc., 170 Cal. App. 3d 836, 849 (1985); Children's Hosp. and Medical Center v. Bonta, 97 Cal. App. 4th 740, 779 (2002) ("California case law clearly provides a trial court discretion to award a fee that compensates work performed in a collateral action that may not have been absolutely necessary to the action in which fees are awarded").  Therefore, Plaintiff is awarded the attorney fees associated with the state court actions.

Third, Defendants argue that Plaintiff should not recover the legal fees of Bennett Lee prior to his admission to the California State Bar. (Defs.' Opp'n at 9.)  In its Reply, Plaintiff withdrew its claim for the fees billed by Bennett Lee prior to his admission to the State Bar on May 24, 2004. (Pl.'s Reply at 21-22.)  Therefore, the attorney fees sought by Plaintiff are reduced by $5,704.00, the amount billed for the services of Bennett Lee from March 8, 2004, through May 23, 2004. (Lee Reply Decl. ¶ 10.)

Fourth, Defendants contend Plaintiff should not recover $709.62 in travel expenses. (Defs.' Opp'n ¶ 17.) Plaintiff argues it should recover these travel expenses because they were incurred by Nicholas Hyslop while visiting the offices of Defendant Mack Construction. (Pl.'s Reply at 18.) However, the declaration of Nicholas Hyslop does not discuss who incurred the expenses, how these expenses were incurred, or when the expenses were incurred, and the exhibits attached to the declaration do not document these expenses. Rather, the declaration merely includes a chart with an entry for "travel" and the amount of "709.62." (Hyslop Decl. ¶ 19.) Without any discussion of or documentation for these expenses, it cannot be said that the expenses incurred were reasonable. Accordingly, Plaintiff cannot recover $709.62 in travel expenses.

In addition, some of the time spent on this litigation by Plaintiff's counsel does not appear reasonable. On April 27, 2005, Plaintiff filed a Motion for Reconsideration, requesting that the Court revisit an Order filed April 27, 2005, which continued the hearing on Plaintiff's Motion for Partial Summary Judgment. An Order filed April 29, 2005, denied Plaintiff's Motion for Reconsideration. (Order, April 29, 2005, at 2.) The Order noted Plaintiff could have opposed Defendants' request for a continuance during "the prescribed time for filling a reply brief," but "Plaintiff did not respond to that request." (Id.) In addition, the Order observed Plaintiff "did not explain why it could not have opposed the continuance request in a timely filed reply brief." (Id.) Instead, Plaintiff devoted "nearly two-thirds of Plaintiff's fourteen page motion" to arguments that "should have been set forth in a . . . reply brief." (Id. at 2, n. 3.) On May 3, 2005, Plaintiff filed a letter dated April 29, 2005,

stating that the "untimeliness of Plaintiff's Reply and objection is due to the fault of counsel . . . for failure to properly calendar the deadline for the Reply." (Letter from Kirsten Roe, Watt, Tieder, Hoffar & Fitzgerald, L.L.P, to the Honorable Garland E. Burrell, Jr., (April 29, 2005) at 1.) Therefore, the attorney fees sought by Plaintiff are reduced by $593.00 because the time spent on these filings was due to the fault of Plaintiff's counsel.[7]

Finally, a review of the invoices and billing statements submitted by Plaintiff reveals that Plaintiff miscalculated the total amount of attorney fees and expenses incurred during this litigation. Plaintiff seeks $138,449.68 in attorney fees and related expenses incurred from March 8, 2004, through October 31, 2005. (McGowan Supp. Decl. ¶ 3.) Plaintiff appears to have calculated this amount by adding $99,997.10, the amount of attorney fees and expenses it incurred through September 30, 2005, and $38,452.58, the total amount billed by its counsel on the November 6, 2005, invoice. (Lee Decl. ¶ 3; McGowan Supp. Decl. Ex. A.) The total amount on the invoice includes $26,008.63 for fees and expenses incurred in October 2005, and a previous balance of $12,443.95 for work performed in September 2005. (McGowan Supp. Decl. Ex. A.) However, the previous balance for

---

[7] This amount was calculated as follows: $161.00 was deducted because Bennett Lee billed .70 hour at $230.00 per hour for tasks associated with the Motion for Reconsideration. (Lee Decl., Ex. A.) Specifically, on April 12, 2005, Bennett Lee billed .60 hour to respond to Defendants' request for a continuance, and on April 14, 2005, he billed .10 hour to define a plan of action in response to the request for a continuance. (Id.) In addition, $432.00 was deducted because Kirsten Roe billed 2.4 hours at $180.00 per hour for tasks associated with the Motion for Reconsideration. (Id.) Specifically, on April 14, 2005, Kirsten Roe billed .40 hour to prepare correspondence relating to the hearing date, on April 15, 2005, she billed 1.5 hours to prepare a stipulation to move the hearing date, and on April 20, 2005, she billed .50 hour to strategize about the preparation of a reply. (Id.)

13

work performed in September 2005 is already included in the $99,997.10 for attorney fees and expenses incurred through September 30, 2005. (Lee Ex. A.) Therefore, the attorney fees and expenses sought by Plaintiff are reduced by $12,443.95 in order to accurately reflect the total amount of fees Plaintiff incurred during this litigation.

Consequently, the $138,449.68 in attorney fees and expenses sought by Plaintiff are reduced (1) by $5,704.00 for the services performed by Bennett Lee prior to his admission to the California State Bar (2) by $593.00 for time not reasonably expended due to the fault of counsel, and (3) by $12,443.95 to accurately reflect the amounts billed. In addition, Plaintiff cannot recover $709.62 in travel expenses because Plaintiff did not demonstrate that these expenses were reasonable. Therefore, Plaintiff shall recover a total of $119,708.73 for attorney fees and expenses.

## II. Prejudgment Interest

Plaintiff requests $14,291.59 in prejudgment interest, "on the grounds that the damages awarded to Plaintiff were sum-certain payments which, under California law, entitled a judgment creditor to prejudgment interest." (Pl.'s Mem. at 13.) Defendant does not raise any arguments in response to this request. "[A] plaintiff is entitled to recover [prejudgment] interest where damages resulting from a breach of contract 'are capable of being made certain by calculation.'" Camrosa County Water Dist. v. Southwest Welding & Mfg. Co., 49 Cal. App. 3d 951, 958 (1975) (quoting California Civil Code § 3287). Plaintiff paid Tina's Interior Design Resources $77,728.00 and Partition Speciality $25,237.36 "only after a due investigation by First National of the claim, and, notably, after Mack Construction already expressly admitted that payment in that sum or approximate sum

14

was due to the respective claimant." (Hyslop Decl. ¶¶ 21-25.) Plaintiff paid Partition Speciality on April 12, 2004, and Tina's Interior Design Resource on August 31, 2004. (McGowan Decl. Ex. A.) After each payment was made, Plaintiff requested Defendants to reimburse it for the amounts Defendants admitted were owing. (Hyslop Decl. ¶ 15.) Therefore, at the time the payments were made, the damages were "certain, or capable of being made certain by calculation." California Civil Code § 3287(a) (West 1997).

According to the Indemnity Agreement, Defendants agreed to pay Plaintiff "interest on all disbursements made by Surety in connection with such loss, costs and expenses incurred by Surety at the maximum rate permitted by law calculated from the date of each disbursement." (Hyslop Decl. Ex. A.) When a contract does not provide a legal rate of interest, California Civil Code § 3289 dictates that "the obligation shall bear interest at a rate of 10 percent per annum after a breach." (West 1997). Applying a 10 percent interest rate to Plaintiff's payments to Partition Speciality and Tina's Interior Design Resource equals $13,525.63 in prejudgment interest.[8] (McGowan Decl. ¶ 2, Ex. A.) Therefore, Plaintiff is awarded $13,525.63 in prejudgment interest for the payments to these two subcontractors.

---

[8] The amount of prejudgment interest was calculated as follows: Plaintiff paid Partition Specialty on April 12, 2004. (McGowan Decl. Ex. A.) Thus, 514 days elapsed between the date of payment and September 8, 2005, the date Judgment was entered. (Id.) Applying a daily interest rate of 10% per year equals $10,948.20 in prejudgment interest for the payment to Partition Speciality. (Id.) Plaintiff paid Tina's Interior Design Resources on August 31, 2004. (Id.) Thus, 373 days elapsed between the date of payment and the date Judgment was entered. (Id.) Applying a daily interest rate of 10% year equals $2,577.43 in prejudgement interest for the payment to Tina's Interior Design Resource.

In addition, it appears Plaintiff seeks prejudgment interest for payments made to its counsel for attorney fees. (McGowan Decl. Ex. A.) However, Plaintiff has not adequately identified or properly documented these payments. Plaintiff only provides a chart identifying the payment dates, the payee as "WTHF," and the amounts paid. (McGowan Decl. Ex. A.) However, it is unclear what the amounts on the chart represent because they do not correspond to the amounts charged by Plaintiff's counsel for attorney fees. (<u>Compare</u> <u>id.</u>, <u>with</u> Lee Decl. Ex. A.) Therefore this request is denied.

<u>CONCLUSION</u>

For the stated reasons, Plaintiff is awarded to $119,708.73 for attorney fees and related expenses and $13,525.63 for prejudgment interest.

IT IS SO ORDERED.

DATED: December 12, 2005

<u>/s/ Garland E. Burrell, Jr.</u>
GARLAND E. BURRELL, JR.
United States District Judge